OPINION
Appellant Sandy Estep appeals the Judgment Entry of the Morrow County Court of Common Pleas, Juvenile Division, which granted appellee the Morrow County Department of Human Services permanent custody of her minor children, Daisey Brookover, Cheryl Benjamin, Lonnie Benjamin, Patricia Osborne and Michael Osborne.
 STATEMENT OF THE FACTS AND CASE
On March 13, 1996, the Morrow County Department of Human Services filed a complaint alleging Daisey Brookover (DOB 11/18/80), Cheryl Benjamin (DOB 7/2/86), Lonnie Benjamin (DOB 11/5/87), Patricia Osborne (DOB 10/18/89), and Michael Osborne (DOB 11/27/92) to be dependent and/or neglected and/or abused children and requesting temporary custody be awarded to DHS pending the hearing on permanent custody. On March 15, 1996, an emergency shelter care hearing was conducted before the magistrate. Via Magistrate's Decision dated March 19, 1996, the magistrate ordered temporary custody of the children be awarded to DHS. An adjudicatory was hearing scheduled for April 2, 1996.
At the adjudicatory hearing, appellant and the fathers of the children stipulated the children were dependent as defined in R.C.2151.04. The trial court adopted the case plan and scheduled a review hearing for May 2, 1996. After the review hearing, the trial court ordered bi-weekly, supervised visitation with the children. After 30 days, the visits would become unsupervised if appellant complied with the case plan. Another review hearing was scheduled for August 5, 1996, but was later continued until October 7, 1996. At the October 7, 1996 review hearing, the parties agreed the children could not be reunified with the parents for at least another six months. At that time, appellant was expecting another child.
On February 13, 1997, the State of Ohio filed a motion for permanent custody. The trial court conducted the hearing on the motion on March 14, 1997, April 15, 1997, and April 25, 1997.
During the hearing, Jenny Chapman, an employee in the Neuropsychiatric Facility at the Ohio State University Hospital, testified Lonnie was admitted into the unit in April, 1995, and in February, 1996. When Lonnie arrived at the hospital for the second time, he displayed suicidal and homicidal behaviors. Chapman noted Lonnie was a difficult child to manage even in the controlled hospital setting.
Ruth Ann Linnabary, a therapist and clinical supervisor at the Central Ohio Mental Health Center, testified her involvement with the family began in the Spring of 1993. Between May, 1993, and June, 1994, Linnabary conducted approximately 34 counseling sessions with Daisey, however, the relationship ended in June, 1994, when Daisey began treatment at Children's Hospital Guidance Center in Westerville, Ohio. In April or May, 1995, Linnabary was again in contact with the family. Linnabary stated she saw Daisey approximately nine times between October, 1995, and April, 1996, during which time, Daisey was hospitalized twice due to suicidal ideations. Linnabary also noted Daisey's emotional and behavioral conditions had worsened since 1993. Linnabary commented appellant was unable to manage Daisey.
Regarding her observations of Lonnie, Linnabary testified the boy was diagnosed with hyperactive disorder. When Lonnie arrived for his sessions, he often wore clothes which did not appropriately fit him and his hair was uncombed. Lonnie also appeared with his hair sporadically cut and told the counsel his mother had cut his hair that way. When Linnabary instructed appellant on how to listen to Lonnie, appellant would become defensive.
Linnabary explained she had recently commenced individual therapy with Cheryl. Prior to that, she observed Cheryl during family sessions. The counselor testified these family sessions occurred rarely because Cheryl and Daisey would engage in heated arguments. Appellant either ignored their fighting or tried unsuccessfully to calm the girls. Cheryl often complained she was not permitted to bring friends to the house. Linnabary stated Cheryl did not follow through with her chores and appellant would not allow the girl to have a privilege unless she earned it. Linnabary explained appellant did not let the child have the privilege even when Cheryl performed her chores.
The counselor further noted appellant could not control the confusion which arose out of typical children's behavior. Appellant did not provide the children with positive feedback and lacked the ability to nurture. Linnabary testified the three oldest children complained about Patrick Osborne, appellant's live-in boyfriend and the father of the two youngest children. She noted some improvement in the relationship between the siblings, however, she opined the improved behavior was a result of the filing of the motion for permanent custody and would not continue if the children were returned to appellant's home.
Beth Ann Leffle-Ployar, a social worker at the Central Ohio Mental Health Center, testified she came in contact with appellant and Patrick Osborne in November, 1995. Leffle-Ployar provided intensive home base services to the family, including teaching parenting skills to appellant and Osborne. These parenting skills included limit setting, appropriate disciplining, and environmental management. Leffle-Ployar worked with the family for six to ten hours a week during the first year. After the children were placed in foster care, she worked with appellant and Osborne three to six hours per week.
The social worker would also be with the family when the children arrived on Friday afternoons for their home visits. She observed a great deal of conflict in the home. Leffle-Ployar testified appellant could not meet the children's emotional needs, which resulted in screaming, crying, and angry outbursts by the children. She noted appellant was unable to get the children to cooperate with her. The social worker commented the children have a low level of respect for appellant's authority. Although Leffle-Ployar taught appellant several methods to assist her in dealing with the children, the methods failed because appellant did not follow through.
In April, 1996, the social worker created a new program for appellant because appellant failed to significantly improve her parenting skills. This new program provided appellant with an opportunity to observe Mary Beth Watterson, a hired role model, parent a number of children. Despite some initial improvement in her parenting skills, particularly in her interactions with Michael, appellant ultimately reverted to her previous behaviors.
Diana McClure, a social worker with Morrow County Children's Services, testified she had monitored the family since July, 1995. She recounted her own observations of the children's violent behaviors and emotional instability as well as appellant's inability to appropriately handle the situations.
Verna Gene Eggleston, a therapist with the Central Ohio Mental Health Center, testified she has been counseling appellant on a weekly basis since April, 1996. She stated appellant suffers from post-traumatic stress disorder and depression. Additionally, appellant is dealing with numerous self-esteem issues. During their sessions, Eggleston and appellant addressed issues involving Patrick Osborne's failure to comply with the case plan. Although Eggleston noted some improvements, she opined appellant would need to continue counseling for an indefinite period. The therapist also expressed her concerns over appellant's ability to cope with the stresses of being a parent and her belief appellant's problems may put the children at risk. During her testimony, appellant admitted she would need continued assistance from county agencies if all the children were returned to her. Dr. John A. Paulus, a psychologist with the Central Ohio Mental Health Center, opined that Patrick Osborne was a poor candidate for parenting due to his mental health problems and disorders. In addition, Cathy Waun, a drug and alcohol counselor with the Morrow County Council on Alcohol Drugs, Inc., testified she performed an assessment of Osborne on January 10, 1997. Through the assessment, she determined Osborne has a problem with marijuana and alcohol. Deputy Samuel Keckler of the Morrow County Sheriff's Department testified he arrested Osborne in November, 1996, for possession of marijuana. The events leading up to the arrest involved Deputy Keckler's finding Osborne, in his van, in a compromising position with an unidentified female.
Via Journal Entry dated May 8, 1997, the trial court awarded permanent custody of the children to DHS.
It is from this Judgment Entry appellant prosecutes this appeal raising the following assignments of error:
 I. THE TRIAL COURT'S FINDING THAT PERMANENT CUSTODY IS IN THE BEST INTEREST OF EACH OF THE FIVE CHILDREN IS NOT SUPPORTED BY SUFFICIENT EVIDENCE AND IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
 II. THE TRIAL COURT'S FINDING THAT PERMANENT CUSTODY IS NECESSARY AS EACH OF THE CHILDREN CANNOT BE RETURNED TO EITHER PARENT WITHIN A REASONABLE PERIOD OF TIME IS NOT SUPPORTED BY SUFFICIENT EVIDENCE AND IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
 III. THE TRIAL COURT ERRED BY MISAPPLYING THE LAW OF PERMANENT CUSTODY TO THE FACTS OF THIS CASE.
 I II
We shall address appellant's first and second assignments of error together. In her first assignment of error, appellant maintains the trial court's finding that awarding permanent custody to the Morrow County Department of Human Services is in the best interest of the children was against the manifest weight of the evidence. In her second assignment of error, appellant contends the trial court's finding that awarding permanent custody to the Morrow County Department of Human Services was necessary because the children could not be returned to either parent with a reasonable period of time was against the manifest weight of the evidence.
We are not fact finders; we neither weigh the evidence nor judge the credibility of witnesses. Our role is to determine whether there is relevant, competent and credible evidence upon which the fact finder could base its judgment. Cross Truck v.Jeffries (Feb. 10, 1982), Stark App. No. CA-5758, unreported. Accordingly, judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed as being against the manifest weight of the evidence.C.E. Morris Co. v. Foley Constr. (1978), 54 Ohio St.2d 279.
The relevant statute is R.C. 2151.414. The statute provides, in pertinent part:
 (B) The court may grant permanent custody of a child to a movant if the court determines at the hearing held pursuant to division (A) of this section, by clear and convincing evidence, that it is in the best interest of the child to grant permanent custody of the child to the agency that filed the motion for permanent custody and that any of the following apply:
 (1) The child is not abandoned or orphaned and the child cannot be placed with either of his parents within a reasonable time or should not be placed with his parents * * *
In determining the best interest of a child, R.C. 2151.414(D) states:
 (D) . . . the court shall consider all relevant factors, including, but not limited to, the following:
 (1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster parents and out-of-home providers, and any other person who may significantly affect the child;
 (2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
(3) The custodial history of the child;
 (4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency.
At trial, the testimony demonstrated the three older siblings, Daisey, Lonnie, Jr., and Cheryl, did not interact well with each other, their parents, or the other siblings. Daisey and Cheryl had a particularly turbulent relationship. Each girl exhibited inappropriate behavior when, and if, appellant paid attention to the other child. Ruth Ann Linnabary testified appellant had a difficult time controlling the two younger children, Patricia and Michael. She was overwhelmed by typical children's behavior. Regarding appellant's ability to nurture, Linnabary stated appellant was not "in-tune" with the children's need for nurturing. For example, Linnabary once observed Michael reach his arms up to appellant communicating his desire to be picked up, however appellant did not notice the child until he kicked her. Thereafter, she bent down and picked him up.
We find the trial court's finding that it was in the children's best interests to grant permanent custody to the Morrow County Department of Human Services is not against the manifest weight of the evidence.
However, a best interest determination is not sufficient to grant permanent custody of a child to an agency. In the instant case, the trial court found the children could not be placed with their parents within a reasonable time or should not be placed with their parents.
In determining in whether a child cannot be placed with either parent within a reasonable period of time or should not be placed with the parents, the trial court shall consider the factors set forth in R.C. 2151.414(E), which provides, in pertinent part:
 If the court determines, by clear and convincing evidence, at a hearing held pursuant to division (A) of this section * * * that one or more of the following exist as to each of the child's parents, the court shall enter a finding that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent:
 (1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties.
 (2) Chronic mental illness, chronic emotional illness, mental retardation, physical disability, or chemical dependency of the parent that is so severe that it makes the parent unable to provide an adequate permanent home for the child at the present time and, as anticipated, within one year after the court holds the hearing pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353
[2151.35.3] of the Revised Code.
The record reveals, although various area agencies have provided appellant with extensive assistance to help her develop appropriate parenting skills, appellant was unable to substantially improve such skills. We acknowledge appellant complied with the mandates of the case plan, however, appellant herself admitted she would not be able to care for the children without continued support. This statement coupled with the evidence presented at the trial indicates on-going, long-term outside support would be necessary in order to keep appellant and her children together. As such, the trial court could find the children could not be placed with appellant within a reasonable time. Furthermore, appellant herself suffers from significant mental health problems, which threatens her ability to nurture and care for the children.
In light of the foregoing, we find the trial court's finding the children could not be placed with appellant within a reasonable time or should not be placed with appellant is not against the manifest weight of the evidence.
Appellant's first and second assignments of error are overruled.
 III
In her third assignment of error, appellant asserts the trial court erred in its application of permanent custody law to the facts of this case. Specifically, appellant complains: 1) the trial court failed to view each child separately when making its determination; 2) the trial court failed to treat each parent separately; and 3) the trial court admitted evidence which pre-dated the filing of the complaint, and used this evidence not only in the adjudication of dependency, but also during the hearing on the motion for permanent custody.
Upon review of the May 8, 1997 Journal Entry, which granted permanent custody to DHS, we note the trial court separately addressed each child and each parent. Accordingly, we find no merit in appellant's assertions that the trial court failed to view each child separately and each parent separately.
We now turn to appellant's assertion the trial court erroneously admitted evidence which pre-dated the filing of the complaint and "re-used" such evidence at the permanent custody hearing. R.C. 2151.414(E) permits a trial court to consider all
relevant evidence, which establishes the existence of one or more of the factors set forth in the statute. This would include evidence of a parent's attempts to remedy the conditions which caused the removal of the children from the home. Consequently, the trial court could consider evidence of the family's extensive history with the Morrow County Department of Human Services and how the services provided to appellant and her children were improving, or not, the problems within the family. Despite the extensive and long-term involvement of county agencies, appellant failed to substantially remedy the conditions which caused the children to be placed outside her home. A review of pre-complaint evidence was necessary for the trial court to make such a determination.
Based upon the foregoing reasons, we find the trial court properly applied the law of permanent custody to the facts of the instant action.
The Judgment Entry of the Morrow County Court of Common Pleas, Juvenile Division is affirmed.
By: Hoffman, J., Gwin, P.J. and Reader, J. concur.
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Morrow County Court of Common, Juvenile Division, is affirmed. Costs assessed to appellant.